Exhibit "B"

**FIRST MASTER LEASE AMENDMENT AND GUARANTOR RATIFICATION**

**THIS FIRST MASTER LEASE AMENDMENT AND GUARANTOR RATIFICATION** ("*Amendment*") is entered into effective as of February ____, 2014 (the "*Effective Date*"), between **GE CAPITAL FRANCHISE FINANCE CORPORATION,** a Delaware corporation, whose address is 450 S. Orange Ave., Suite 1100, Orlando, Florida 32801-3352 ( "*Lessor*"), and **GKRM, INC.,** a Georgia corporation, whose address is 2095 Highway 211 NW, Suite 2F #362, Braselton, Georgia 30517 ("*Lessee*"), and **JAMES D. GRAVES,** whose address is 2095 Highway 211 NW, Suite 2F #362, Braselton, Georgia 30517, and **JOHNATHAN E. KNEFF,** 2474 Northern Oak Drive, Braselton, Georgia 30517 (collectively, "*Guarantors*").

A.     Lessor is the landlord under the Master Lease, dated as of April 21, 2008 (the "*Master Lease*"), whereby Lessor leases to Lessee, as successor by assignment from GK Management, Inc., a Georgia corporation, certain real property and improvements known as 2000 Watson Boulevard, Warner Robins, Georgia 31093 and 2617 Deans Bridge Road, Augusta, Georgia 30906, and more particularly described on *Exhibit A* (collectively, the "*Premises*"), as evidenced by Memoranda of Master Lease, dated on or about the date of the Master Lease and recorded in the applicable real property records where the Premises are located.  The obligations of the Lessee under the Master Lease are guaranteed by (collectively, the "*Guaranties*"): (i) Guarantors pursuant to that certain Unconditional Guaranty of Payment and Performance, dated on or about the date of the Master Lease, for the benefit of Lessor, and (ii) James D. Graves pursuant to that certain Unconditional Guaranty of Payment and Performance, dated on or about the date of this Amendment, for the benefit of Lessor.

B.     Lessor and Lessee desire to amend the Master Lease and the Guarantors desires to ratify such amendments as set forth in this Amendment.

**NOW THEREFORE,** in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lessor and Lessee agree as follows:

1.     Amendments.  The Master Lease is amended as of the Effective Date as follows:

(a)     The term "*Base Annual Rental*" shall mean $55,000.00, as adjusted on each Adjustment Date occurring subsequent to the date of this Amendment as provided in *Section 3.2* of the Lease.

(b)     Lessee shall have the right to cease operations at the Premises located in Augusta, Georgia; *provided, however*, nothing in this *subsection (b)* is intended to limit Lessee's other obligations under the Master Lease with respect to such Premises, including Lessee's obligations to maintain the physical condition of such Premises as set forth in the Master Lease, maintain the insurance required on such Premises as set forth in the Master Lease and paying all real and personal property taxes applicable to such Premises as set forth in the Master Lease.  Lessee agrees to use commercially reasonable efforts to sublease the Augusta Premises to a third-party, *provided that* any such sublessee and the terms and conditions of such sublease shall be subject to Lessor's approval in Lessor's sole and absolute discretion.

(c)     *Article 16* of the Master Lease is deleted and of no further force and effect.

2.     Guarantor Ratification.  Each Guarantor hereby accepts and ratifies the amendments to the Master Lease as set forth in this Amendment and hereby acknowledges and agrees that the Guaranties are in full force and effect with respect to the Master Lease, including the amendments set forth in this Amendment.

3.     Binding Effect.  This Amendment shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective successors and assigns.

4.     Governing Law; Submission to Jurisdiction. **THE LAWS OF THE STATE OF ARIZONA (WITHOUT GIVING EFFECT TO ITS CONFLICTS OF LAWS PRINCIPLES) SHALL GOVERN ALL MATTERS ARISING OUT OF, IN CONNECTION WITH OR RELATING TO THIS AMENDMENT.** Any

legal action or proceeding with respect to this Amendment shall be brought exclusively in the courts of the State of Arizona located in Maricopa County or of the United States for the District of Arizona, and each party accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; *provided, however*, that nothing in this Amendment shall limit or restrict the right of either party to commence any proceeding in the federal or state courts located in the state in which the Premises is located where the sole remedy sought is specific performance.  Lessor and Lessee hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, that either of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

     5.    <u>Attorneys' Fees</u>.  Should either party institute any legal action or proceeding to enforce the provisions of this Amendment, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred in connection with the exercise of its rights and remedies hereunder as well as court costs and expert witness fees as the court shall determine.

     6.    <u>Amendment Controls</u>.  Except as is specifically amended herein, the terms and conditions of the Master Lease and the Guaranties are ratified and confirmed and shall remain in full force and effect.  If any provision of the Master Lease or any Guaranty is in conflict with any provision of this Amendment, the terms of this Amendment shall control.

     7.    <u>Counterparts</u>.  This Amendment may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.  Signature pages may be detached from the counterparts and attached to a single copy of this Amendment to physically form one document.  Signatures on counterparts of this Amendment that are delivered via facsimile or by other electronic means are authorized, and this Amendment shall be deemed executed when an executed counterpart hereof is transmitted by a party to the other party physically or via any electronic means.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the parties hereto have entered into this Amendment as of the Effective Date.

Signed, sealed and delivered in presence of:

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

JOCELYN MENNENGA
Commission # FF 027959
Expires October 16, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

**LESSOR:**

**GE CAPITAL FRANCHISE FINANCE
CORPORATION**, a Delaware corporation

By:_____
Printed Name: Dale van Gelder
Its Authorized Signatory

Signed, sealed and delivered in presence of:

_____

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

**LESSEE:**

**GKRM, INC.**, a Georgia corporation

By:_____
Printed Name:_____
Its Authorized Signatory

**GUARANTORS:**

Signed, sealed and delivered in presence of:

_____

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

_____

**JAMES D. GRAVES**

*GEFF smartDocs Form 5506*
*3/3/10*

Contract No. 010825.0102

**FINAL EXECUTION COPY**

**IN WITNESS WHEREOF**, the parties hereto have entered into this Amendment as of the Effective Date.

Signed, sealed and delivered in presence of:

**LESSOR:**

**GE CAPITAL FRANCHISE FINANCE CORPORATION**, a Delaware corporation

_____

Unofficial witness

By:_____
Printed Name:_____
Its Authorized Signatory

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

Signed, sealed and delivered in presence of:

**LESSEE:**

**GKRM, INC.**, a Georgia corporation

_____

Unofficial witness

By:_____
Printed Name: James Graves
Its Authorized Signatory

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

**GUARANTORS:**

Signed, sealed and delivered in presence of:

**JAMES D. GRAVES**

_____

Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES: 8·1·2017

(AFFIX NOTARY SEAL)

*GEFF smartDocs Form 5506*
*3/3/10*

Contract No. 010825.0102

**FINAL EXECUTION COPY**

Signed, sealed and delivered in presence of:

_____

Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES: 8·1·2017

(AFFIX NOTARY SEAL)

_____
**JONATHAN E. KNEFF**

AMY L HILLMAN
MY COMMISSION EXPIRES
NOTARY
PUBLIC
AUGUST 1, 2017
FULTON COUNTY, GEORGIA

*GEFF smartDocs Form 5506*
*3/3/10*

Contract No. 010825.0102

**FINAL EXECUTION COPY**

**EXHIBIT A**

**DESCRIPTION OF PREMISES**

<u>Asset 031025, Warner Robins, GA</u>

All that tract of parcel of land situate, lying and being in Land Lot 165 of the 5th Land District of Houston County, Georgia, being more particularly described as follows:

BEGIN at a rebar marking the intersection of the northerly right-of-way line of Watson Boulevard (100 foot right-of-way) with the westerly right-of-way line of Woodcrest Boulevard (80 foot right-of-way); thence North 88°31'15" West along said northerly right-of-way line of Watson Boulevard a distance of 115.26 feet to a rebar; thence North 00°00'34" West a distance of 209.92 feet to a rebar; thence South 88°33'54" East a distance of 115.10 feet to a rebar on said westerly right-of-way line of Woodcrest Boulevard; thence South 00°03'06" East along said right-of-way line a distance of 210.01 feet to the POINT OF BEGINNING.

<u>Asset 031054, Augusta, GA</u>

All that tract or parcel of land located in the State of Georgia, County of Richmond, being more particularly described as follows:

Commence at the intersection of the southwesterly right-of-way line of Murphy Road (40 foot right-of-way) with the Northwesterly right-of-way line of Deans Bridge Road (85 foot right-of-way); thence South 55°04'48" West along said northwesterly right-of-way line of Deans Bridge Road a distance of 550.29 feet to a concrete monument; thence continue South 55°04'48" West along said right-of-way line a distance of 173.71 feet to a rebar marking the POINT OF BEGINNING of the following described parcel; thence South 55°46'01" West along said right-of-way line a distance of 130.10 feet to an "X" in sidewalk; thence North 36°10'01" West a distance of 224.89 feet to a rebar; thence North 55°43'33" East a distance of 130.07 feet to a rebar; thence South 36°10'25" East a distance of 224.99 feet to the POINT OF BEGINNING.

**ASSIGNMENT AND ASSUMPTION OF MASTER LEASE AGREEMENT AND ENVIRONMENTAL INDEMNITY AGREEMENT AND LANDLORD CONSENT**

THIS **ASSIGNMENT AND ASSUMPTION OF MASTER LEASE AGREEMENT AND ENVIRONMENTAL INDEMNITY AGREEMENT AND LANDLORD CONSENT** (this "*Assignment*") is made as of February ____, 2014, by and among **GE CAPITAL FRANCHISE FINANCE CORPORATION**, a Delaware corporation, whose address is 450 South Orange Avenue, 11ᵗʰ Floor, Orlando, Florida 32801 ("*Lessor*"), **GK MANAGEMENT, INC.**, a Georgia corporation, whose address is 2095 Highway 211 NW, Suite 2F #362, Braselton, Georgia 30517 ("*Lessee*"), **GKRM, INC.**, a Georgia corporation, whose address is 2095 Highway 211 NW, Suite 2F #362, Braselton, Georgia 30517 ("*Assignee*"), and **JAMES D. GRAVES**, whose address is 2095 Highway 211 NW, Suite 2F #362, Braselton, Georgia 30517, and **JOHNATHAN E. KNEFF**, whose address is 3868 Darnell Creek Court, Buford, Georgia 30519 (collectively, "*Guarantors*"). Capitalized terms used in this Assignment and not defined herein have the meanings given to such terms in the Master Lease (as defined below).

A.    Lessor is the landlord and Lessee is the tenant under the master lease agreement described on *Exhibit A* to this Assignment (the "*Master Lease*"), whereby Lessor leases to Lessee the real property and improvements located at 2000 Watson Boulevard, Warner Robins, Georgia 31093 and 2617 Deans Bridge Road, Augusta, Georgia 30906 (collectively, the "*Premises*"), as evidenced by the Memoranda of Master Lease, dated on or about the date of the Master Lease and recorded on in the applicable real property records for the Premises (individually, a "*Memorandum*" and collectively, the "*Memoranda*").

B.    Lessor, as landlord, and Lessee, as tenant or Indemnitor, and Guarantors entered into that certain Environmental Indemnity Assignment dated on or about the date of the Master Lease with respect to the Premises (the "*Environmental Indemnity Agreement*");

C.    Pursuant to that certain Unconditional Guaranty of Payment and Performance dated on or about the date of the Master Lease, Guarantors guaranteed the obligations of Lessee under the Master Lease (the "*Existing Guaranty*");

D.    Lessee is a debtor-in-possession under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in a bankruptcy case currently pending in the United States Bankruptcy Court for the Northern District of Georgia (the "*Bankruptcy Court*") under case no. 12-23945 (the "*Bankruptcy Case*").

E.    Lessee's Second Amended Joint Plan of Reorganization dated November 4, 2013 (the "*Plan*") was approved by that certain Order Confirming Debtors' Second Amended Plan of Reorganization entered by the Bankruptcy Court in the Bankruptcy Case on November 12, 2013 (the "*Confirmation Order*").

F.    Pursuant to the Plan and the Confirmation Order, on the Effective Date of the Plan (as defined in the Plan), all assets and rights of Lessee, including, without limitation, the Master Lease and the Environmental Indemnity Agreement (together with all rights thereunder), will be automatically transferred to or otherwise vest in Assignee.

G.    Pursuant to the Plan and the Confirmation Order, Assignee is required to, among other things, assume the Master Lease pursuant to Section 365(a) of the Bankruptcy Code, subject to certain modifications set forth in Section 9.1 of the Plan (the "*Lease Modifications*").

H.    Contemporaneously herewith, Lessor and Assignee have entered into that certain First Master Lease Amendment and Guarantor Ratification dated of even date herewith (the "*First Amendment*"), pursuant to which the Lease Modifications required by the Plan and the Confirmation Order have been made to the Master Lease.

I.    In order to fulfill their respective obligations under the Plan and the Confirmation Order, Lessee desires to enter into this Assignment to further evidence the assignment of all of its right, title, interest and obligations under the Master Lease (as modified by the First Amendment) and the Environmental Indemnity

Agreement (collectively, the "***Lease Documents***") to Assignee, and Assignee desires to accept and assume the same, all as set forth in this Assignment.  Lessee, Assignee and Guarantors have requested that Lessor consent to the assignment and assumption of the Lease Documents by Assignee.  Lessor is willing to agree to such request on the terms and conditions set forth in this Assignment.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  <u>Assignment of Lease Documents</u>.  Lessee hereby assigns to Assignee all of its right, title, interest, responsibilities, liabilities and obligations in, to and under the Lease Documents as of February ____, 2014 (the "***Assignment Effective Date***").

2.  <u>Acceptance and Assumption of Lease Documents</u>.  Assignee hereby: (a) accepts this assignment of all of Lessee's right, title, and interest under the Lease Documents; and (b) assumes and agrees to perform and observe all of Lessee's covenants, responsibilities, liabilities and obligations set forth in the Lease Documents pursuant to Section 365(a) of the Bankruptcy Code.

3.  <u>Consent to Assignment</u>.  In consideration of the foregoing assumption by Assignee and subject to the terms and conditions contained in this Assignment, including the conditions precedent set forth in ***Section 4***, Lessor hereby consents to the assignment to and the assumption of the Lease Documents by Assignee.  Lessor's consent to this assignment shall not be construed to constitute consent to any future assignment of the Lease Documents.

4.  <u>Conditions Precedent</u>.  The effectiveness of this Assignment is subject to satisfaction of the following conditions on or before the Assignment Effective Date:

(a)  <u>Proof of Insurance</u>.  Assignee shall deliver to Lessor an executed certificate of insurance in form and substance satisfactory to Lessor evidencing that all insurance required by the Master Lease is in full force and effect.

(b)  <u>Automatic Clearing House Debit ("***ACH***")</u>.  Assignee shall have provided Lessor with an executed ACH form, in the form attached hereto as ***Exhibit A***, for Lessor to establish and maintain automated clearinghouse payments with respect to the Master Lease.

(c)  <u>Franchise Agreement</u>.  Lessee or Assignee shall deliver to Lessor evidence satisfactory to Lessor that Lessee's franchise agreement with Long John Silver's, LLC ("***Franchisor***") for the Premises located in Warner Robins, Georgia has been assigned to Assignee, or a new franchise agreement for such Premises has been entered into between Assignee and Franchisor, and all assignment and/or franchise fees in connection therewith have been paid or waived, and Assignee is in good standing with Franchisor.

(d)  <u>Fees and Expenses</u>.  Assignee agrees to pay to Lessor all out of pocket expenses reasonably incurred by Lessor in connection with this Assignment, including reasonable attorneys' fees.

(e)  <u>Memorandum of Assignment and Assumption of Master Lease.</u>  On or before the execution of this Assignment, Lessee and Assignee shall execute and deliver to Lessor a Memorandum of Assignment and Assumption of Master Lease and Guaranty in the form attached hereto as ***Exhibit B***, which shall be recorded in the County Recorder's office where each Memorandum was recorded, at Lessee's sole cost and expense.

(f)  <u>Lease Amendment</u>.  Concurrent with the execution of this Assignment, Lessee shall execute and deliver to Lessor a lease amendment (i.e., the First Amendment) in the form attached hereto as ***Exhibit C***.

(g)     Plan and Confirmation Order.  Lessee and Assignee are in compliance with each of their respective obligations under the Plan and the Confirmation Order, all of the conditions to the occurrence of the Effective Date (as defined in the Plan) will be satisfied, the documents evidencing the GECC Restructured Loan (as defined in the Plan) will be executed and delivered and all of the conditions to the GECC Restructured Loan becoming effective will be satisfied, and the Confirmation Order has not been stayed, reversed, modified or amended, and is a final order not subject to further appeal.

5.     Lessee Representations and Warranties.  Lessee represents, warrants and covenants and certifies to Lessor and Assignee that:

(a)     The Lease, as modified by the Plan, is valid and in full force and effect.

(b)     Except for the filing of the Bankruptcy Case which is the subject of the Plan, no event of default exists, and, no event has occurred that, with the giving of notice or the passage of time, or both, would constitute a default under any of the Lease Documents.

(c)     With respect to Lessee: (i) Lessee has full power and authority to enter into and perform its obligations under this Assignment and the Lease Documents; (ii) the entry into and performance by Lessee of this Assignment and the Lease Documents does not and will not conflict with or violate any provision of Lessee's organizational documents; and (iii) this Assignment has been duly authorized and validly executed and delivered by Lessee.

(d)     Lessee is the owner of the entire lessee's interest in the Premises and such interest has not been assigned, subleased, encumbered, mortgaged, or hypothecated to any third person in any manner, and prior to the consummation of this Assignment no person other than Lessee has any right, title, or interest in the Lease Documents or the Premises.

6.     Assignee Representations and Warranties.  Assignee represents, warrants and covenants and certifies to Lessor that:

(a)     With respect to Assignee:  (i) Assignee is validly existing and in good standing under the laws of the state of its formation and is duly qualified and licensed to do business in the state where the Premises are located; (ii) Assignee has full power and authority to enter into and perform its obligations under this Assignment and the Lease Documents; (iii) the entry into and performance by Assignee of this Assignment and the Lease Documents does not and will not conflict with or violate any provision of Assignee's organizational documents; and (iv) this Assignment has been duly authorized and validly executed and delivered by Assignee.

(b)     The Lease Documents assumed by Assignee pursuant to this Assignment constitute the legal, valid and binding obligations of Assignee, enforceable against Assignee in accordance with their terms, except as enforceability may be limited by the Plan and applicable bankruptcy, insolvency, liquidation, reorganization and other laws affecting the rights of creditors generally, and general principles of equity.

(c)     To its present and actual knowledge, Assignee has received no notice of any action, suit, investigation, proceeding or arbitration at law or in equity, including condemnation proceedings or proceedings in lieu of condemnation, pending or threatened against or affecting (i) Assignee or any of its assets or revenues or (ii) this Assignment, the Lease Documents, or any of the transactions contemplated hereby.

(d)     Assignee is not, and will use commercially reasonable best efforts to ensure that no Person who owns a controlling interest in or otherwise controls Assignee is a Person; (i) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("*OFAC*"), Department of the Treasury, or any other similar lists maintained by OFAC or any

**FINAL EXECUTION COPY**

other Governmental Authority pursuant to any authorizing statute, Executive Order or regulation; (ii) designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation, or any other similar Executive Orders; or (iii) subject to any trade restrictions under any Applicable Regulations, including those referenced in *clauses (i)* and *(ii)* of this Section; and (iv) Assignee and each of the other Lessee Parties are and will remain in full compliance with all applicable Bank Secrecy Act ("***BSA***") laws, regulations, and government guidance on BSA compliance and on the prevention and detection of money laundering violations or terrorist activities or threats.

    (e)    All representations and warranties set forth in the Lease Documents are true and correct with respect to Assignee and the property and assets of Assignee, except as may have been modified by the Plan.

    7.    <u>Possession</u>.  Lessee shall deliver possession of the Premises to Assignee as of the Assignment Effective Date.

    8.    <u>Security Deposit</u>.  The parties acknowledge that no advance rental or security deposit is being held by Lessor under the Master Lease.

    9.    <u>Taxes</u>.  Lessee shall deliver to Lessor evidence satisfactory to Lessor that any and all real and personal property taxes due and owing on the Premises have been paid up to the Assignment Effective Date.

    10.    <u>No Release of Lessee</u>.  This Assignment shall not be deemed to release any liability or obligation of Lessee pursuant to the Lease Documents.

    11.    <u>No Release of Guarantors; Additional Guaranty</u>.  This Assignment shall not be deemed to release any liability or obligation of Guarantors pursuant to the Lease Documents and the Existing Guaranty shall remain in full force and effect.  Concurrently with the execution and delivery of this Assignment, James D. Graves is executing and delivering to Lessor an Unconditional Guaranty of Payment and Performance with respect to the obligations of Assignee under the Master Lease.

    12.    <u>Consent; Reaffirmation; and Acknowledgement</u>.  Each Guarantor (a) consents to the terms and conditions of this Assignment; and (b) reaffirms the Existing Guaranty and confirms and agrees that, notwithstanding this Assignment and consummation of the transactions contemplated thereby, the Existing Guaranty and all of such Guarantor's covenants, obligations, agreements, waivers, and liabilities set forth in the Existing Guaranty continue in full force and effect in accordance with their terms.

    13.    <u>Release of Lessor</u>.  Lessee and Guarantors fully, finally and forever release and discharge (a) Lessor; (b) its predecessors in interest; (c) their respective successors, assigns and affiliates; and (d) the directors, officers, employees, agents and representatives of Lessor, such predecessors in interest, and such successors, assigns and affiliates (collectively, the "***Lessor Parties***" and individually a "***Lessor Party***") from any and all actions, causes of action, claims, debts, demands, liabilities, obligations and suits, of whatever kind or nature, in law or equity, that Lessee or Guarantors occurring on or before the Assignment Effective Date, whether known or unknown (i) in respect of the Lease Documents, the Premises, the Existing Guaranty, or the actions or omissions of Lessor in respect of the foregoing and (ii) arising from events occurring prior to the date of this Assignment, except to the extent such liabilities, charges or obligations exist pursuant to the terms of this Assignment.  The foregoing release by Lessee and Guarantors is not intended to release, and shall not be deemed to release, the Lessor Parties from any obligations the Lessor Parties, or any Lessor Party, may have to Lessee or Guarantors under any agreements or other documents other than the Lease Documents.

    14.    <u>Effect of Release</u>.  THE PARTIES EXPRESSLY WAIVE ANY PROVISION OF STATUTORY OR DECISIONAL LAW TO THE EFFECT THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN SUCH PARTY'S FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY SUCH PARTIES, MUST HAVE MATERIALLY AFFECTED SUCH PARTY'S SETTLEMENT WITH THE RELEASED PARTIES, INCLUDING PROVISIONS SIMILAR TO SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH PROVIDES: "A

GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

15.    Further Assurances.  The parties hereto agree to execute, acknowledge (as appropriate), and deliver to Lessor such additional documentation as reasonably required by Lessor to effectuate the provisions of this Assignment.

16.    Binding Effect.  This Assignment shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

17.    Attorneys' Fees.  Should any party to this Assignment institute any legal action or proceeding to enforce the provisions of this Assignment, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred in connection with the exercise of its rights and remedies hereunder as well as court costs and expert witness fees, as the court shall determine; *provided, however*, in no event shall a party be obligated to pay any portion of such fees or costs unless and until said party has been made a party to such action and a court with jurisdiction over such action has entered a final, non-appealable order finding that a party has defaulted in its obligations under this Assignment.

18.    WAIVER OF JURY TRIAL.  EACH OF THE PARTIES TO THIS AGREEMENT, TO THE EXTENT PERMITTED BY LAW, EACH WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING ARISING OUT OF, IN CONNECTION WITH OR RELATING TO, THIS ASSIGNMENT, THE LEASE DOCUMENTS, OR THE PREMISES.  THIS WAIVER APPLIES TO ANY ACTION, SUIT OR PROCEEDING WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE.

19.    Indemnity.  Lessee, Assignee and Guarantors each hereby agree to indemnify, defend, and hold harmless the Lessor Parties for, from and against any and all loss, damages, causes of action or claims arising from this Assignment (including, but not limited to, any claim brought for a finder's fee, brokerage commission or other compensation on account of alleged employment as a broker, finder or other intermediary in connection with this Assignment) or arising as a result of the breach by such party or any of its directors, officers, employees, agents or representatives of such party's obligations under this Assignment or as a result of the inaccuracy of any representation or warranty made by such party in this Assignment  The foregoing indemnifications shall survive the consummation or termination of this Assignment.

20.    Governing Law; Submission to Jurisdiction.  **THE LAWS OF THE STATE OF ARIZONA (WITHOUT GIVING EFFECT TO ITS CONFLICTS OF LAWS PRINCIPLES) SHALL GOVERN ALL MATTERS ARISING OUT OF, IN CONNECTION WITH OR RELATING TO THIS ASSIGNMENT.** Any legal action or proceeding with respect to this Assignment shall be brought exclusively in the federal or state courts in the state where the Premises are located, or in the federal or state courts in the State of Arizona located in Maricopa County, and each party accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts.  The parties hereto hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, that either of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

21.    Entire Agreement.  This Assignment sets forth all terms, conditions and understandings between the parties with respect to the assignment of the Lease Documents, and there are no terms, conditions or understandings either oral or written between the parties hereto with regard to the assignment of the Lease Documents other than as set forth herein.  No alteration, amendment, change or addition to this Assignment shall be binding unless reduced to writing and signed by all of the parties hereto.

22.    Counterparts.  This Assignment may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.  Signature pages may be detached from the counterparts and attached to a single copy of this Assignment to physically form one document. Delivery of an executed signature page of this Assignment by facsimile or e-copy transmission shall be as effective as delivery of a manually executed counterpart thereof.

THIS SPACE INTENTIONALLY LEFT BLANK

6

FINAL EXECUTION COPY

**IN WITNESS WHEREOF**, the parties hereto have entered into this Amendment as of the Effective Date.

Signed, sealed and delivered in presence of:

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

JOCELYN MENNENGA
Commission # FF 027959
Expires October 16, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

Signed, sealed and delivered in presence of:

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

Signed, sealed and delivered in presence of:

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

Signed, sealed and delivered in presence of:

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

**LESSOR:**

**GE CAPITAL FRANCHISE FINANCE
CORPORATION**, a Delaware corporation

By:_____
Printed Name:_____
Its Authorized Signatory

**LESSEE:**

**GKRM, INC.**, a Georgia corporation

By:_____
Printed Name:_____
Its Authorized Signatory

**GUARANTORS:**

_____
**JAMES D. GRAVES**

_____
**JONATHAN E. KNEFF**

Contract No. 010825.0102

**FINAL EXECUTION COPY**

**IN WITNESS WHEREOF**, the parties have executed this Assignment as of the date first above written.

Signed, sealed and delivered in presence of:

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)


**LESSOR:**

**GE CAPITAL FRANCHISE FINANCE
CORPORATION**, a Delaware corporation

By:_____
Printed Name:_____
Its Authorized Signatory


Signed, sealed and delivered in presence of:

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES: 8.1.2017

(AFFIX NOTARY SEAL)


**LESSEE:**

**GK MANAGEMENT, INC.**, a Georgia corporation

By:_____
Printed Name: _Johnathan E Kref_____
Its: _CEO_____


Signed, sealed and delivered in presence of:

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:
8.1.2017

(AFFIX NOTARY SEAL)


**ASSIGNEE:**

**GKRM, INC.**, a Georgia corporation

By:_____
Printed Name: _James Graves_____
Its: _Ceo_____


5511-3.25.13

Contract No. 010825.0102

**FINAL EXECUTION COPY**

Signed, sealed and delivered in presence of:    **GUARANTORS:**

_____

_____
Unofficial witness                  **JAMES D. GRAVES**

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

Signed, sealed and delivered in presence of:

_____

_____
Unofficial witness                  **JOHNATHAN E. KNEFF**

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

5511-3.25.13                          Contract No. 010825.0102

**FINAL EXECUTION COPY**

**EXHIBIT A**

**LEASE DESCRIPTION**

Master Lease, dated as of April 21, 2008 between GE Capital Franchise Finance Corporation, a Delaware corporation, as landlord, and GK Management, Inc., a Georgia corporation, as tenant.

**EXHIBIT A**

**AUTHORIZATION FOR AUTOMATIC PAYMENTS - ACH DEBITS**

| Customer:  Please complete all below areas. | |
|---|---|
| Account Holder Name (must be the same as Customer name, unless otherwise approved by GE): | |
| Address (if different from Customer): | Phone:  (____) ____-_____ |
| Customer Name (if different from Account Holder): | |
| Name of Bank: | |
| Account Number: | ABA Routing Number:* |

(A)       *The ABA Routing Number is typically a 9-digit number located next to the account number at the bottom of the check.  However, some banks use a different routing number for ACH debits.  If you are unsure of the ABA Routing Number used by your bank for ACH debits, please contact your bank for this information.

**NOTE:**  The ACH set-up for new accounts may take up to 10 days, and ACH debits initiated and honored within this 10-day period will not be considered late payments.

(B)       **AUTHORIZATION:**  Account Holder authorizes GE Capital Franchise Finance Corporation and its affiliates ("*GE*") to initiate debit entries to the account number at the Bank named above and to debit such account as payment of amounts due and owing from time to time by Customer to GE.  This Authorization will remain in full force and effect until GE has received written notice of termination from Account Holder in such manner as to afford GE and Bank a reasonable opportunity to act upon such notice.

| Name (Print): | Title: |
|---|---|
| Signature | Date Signed: |

**RETURN INSTRUCTIONS:  Please return the following to the address below:**

1.       This Authorization, duly executed where noted above.

2.       A voided check from the account identified above.  If a check pre-printed with the Account Holder's name cannot be provided, please attach a letter from the Bank confirming the account information requested above.

GE Capital, Franchise Finance
Attn:  Lyena Hale
450 South Orange Avenue, Suite I100
Orlando, FL 32801
Fax:  407-540-2523
Email: lyena.hale@ge.com

5511-3.25.13
4820-5100-1622.4

Contract No. 010825.0102

**FINAL EXECUTION COPY**

| For Office Use Only | |
|---|---|
| Relationship of Account Holder to Customer:<br>_____<br><br>GE                                    Company:<br>_____<br>Loan/Lease                              ID#:<br>_____<br>Client              ID              #:<br>_____<br>Initial        Debit        Start      Date:<br>_____<br>Prepared                              by:<br>_____<br>Date:<br>_____ | ☐   New Setup<br>☐   Change<br>☐   Watchlist Screen Completed<br>☐   Non-U.S Bank (see Compliance)<br>☐   Account Holder updated in system (if |

**FINAL EXECUTION COPY**

**EXHIBIT B**

**MEMORANDUM OF ASSIGNMENT AND ASSUMPTION OF MASTER LEASE AND GUARANTY**

**PREPARED BY:**

_____
_____
_____
_____

**WHEN RECORDED, RETURN TO:**

_____
_____
_____
_____

---

**MEMORANDUM OF ASSIGNMENT AND ASSUMPTION OF MASTER LEASE AND GUARANTY**

THIS **MEMORANDUM OF ASSIGNMENT AND ASSUMPTION OF MASTER LEASE AND GUARANTY** ("*Memorandum*") is effective as of February _____, 2014 (the "*Effective Date*"), between **GK MANAGEMENT, INC.**, a Georgia corporation, whose address is ("*Assignor*"), and **GKRM, INC.**, a Georgia corporation, whose address is  ("*Assignee*").

A.      Assignor is the tenant under the master lease agreement, dated as of April 21, 2008 (the "*Master Lease*") between GE Capital Franchise Finance Corporation, a Delaware corporation ("*Lessor*"), as landlord, and Assignor, as tenant, whereby Lessor leased to Assignor the real property and improvements more particularly described on *Exhibit A* (the "*Premises*"), as evidenced by that certain Memorandum of Master Lease, dated on or about the date of the Master Lease and recorded _____, as Entry No. _____ in the _____ County, Georgia Recorder's office.  Assignor's obligations under the Master Lease have been guaranteed by James D. Graves and Johnathan E. Kneff pursuant to a guaranty of lease, dated on or about the date of the Master Lease.

B.      Assignor and Assignee have entered into an Assignment and Assumption of Master Lease and Guaranty ("*Agreement*"), of even date herewith, and hereby incorporate the terms and conditions of the Agreement as if set forth in full herein, and record this Memorandum to serve as constructive notice of the terms and conditions of the Agreement, with the intent that such Agreement be binding on all successors or assigns of Assignor and Assignee.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Memorandum as of the Effective Date.

Signed, sealed and delivered in presence of:      **ASSIGNOR:**

      **GK MANAGEMENT, INC.**, a Georgia corporation

_____

Unofficial witness

      By:_____

_____      Printed Name:_____

Notary Public      Its Authorized Signatory

MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

Signed, sealed and delivered in presence of:      **ASSIGNEE:**

      **GKRM, INC.**, a Georgia corporation

_____

Unofficial witness

      By:_____

_____      Printed Name:_____

Notary Public      Its Authorized Signatory

MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

**EXHIBIT A**
**LEGAL DESCRIPTION OF THE PREMISES**

Asset 031025, Warner Robins, GA

All that tract of parcel of land situate, lying and being in Land Lot 165 of the 5th Land District of Houston County, Georgia, being more particularly described as follows:

BEGIN at a rebar marking the intersection of the northerly right-of-way line of Watson Boulevard (100 foot right-of-way) with the westerly right-of-way line of Woodcrest Boulevard (50 foot right-of-way); thence North 88°31'15" West along said northerly right-of-way line of Watson Boulevard a distance of 115.26 feet to a rebar; thence North 00°00'34" West a distance of 209.92 feet to a rebar; thence South 88°33'54" East a distance of 115.10 feet to a rebar on said westerly right-of-way line of Woodcrest Boulevard; thence South 00°03'06" East along said right-of-way line a distance of 210.01 feet to the POINT OF BEGINNING.

Asset 031054, Augusta, GA

All that tract or parcel of land located in the State of Georgia, County of Richmond, being more particularly described as follows:

Commence at the intersection of the southwesterly right-of-way line of Murphy Road (40 foot right-of-way) with the Northwesterly right-of-way line of Deans Bridge Road (85 foot right-of-way); thence South 55°04'48" West along said northwesterly right-of-way line of Deans Bridge Road a distance of 550.29 feet to a concrete monument; thence continue South 55°04'48" West along said right-of-way line a distance of 173.71 feet to a rebar marking the POINT OF BEGINNING of the following described parcel; thence South 55°46'01" West along said right-of-way line a distance of 130.10 feet to an "X" in sidewalk; thence North 36°10'01" West a distance of 224.89 feet to a rebar; thence North 55°43'33" East a distance of 130.07 feet to a rebar; thence South 36°10'25" East a distance of 224.99 feet to the POINT OF BEGINNING.

5511-3.25.13
4820-5100-1622.4

Contract No. 010825.0102

**FINAL EXECUTION COPY**

**EXHIBIT C**

**LEASE AMENDMENT**

**FIRST MASTER LEASE AMENDMENT AND GUARANTOR RATIFICATION**

**THIS FIRST MASTER LEASE AMENDMENT AND GUARANTOR RATIFICATION** ("*Amendment*") is entered into effective as of February _____, 2014 (the "*Effective Date*"), between **GE CAPITAL FRANCHISE FINANCE CORPORATION**, a Delaware corporation, whose address is 450 S. Orange Ave., Suite 1100, Orlando, Florida 32801-3352 ( "*Lessor*"), and **GKRM, INC.**, a Georgia corporation, whose address is 2095 Highway 211 NW, Suite 2F #362, Braselton, Georgia 30517 ("*Lessee*"), and **JAMES D. GRAVES**, whose address is 2095 Highway 211 NW, Suite 2F #362, Braselton, Georgia 30517, and **JOHNATHAN E. KNEFF**, 2474 Northern Oak Drive, Braselton, Georgia 30517 (collectively, "*Guarantors*").

A.      Lessor is the landlord under the Master Lease, dated as of April 21, 2008 (the "*Master Lease*"), whereby Lessor leases to Lessee, as successor by assignment from GK Management, Inc., a Georgia corporation, certain real property and improvements known as 2000 Watson Boulevard, Warner Robins, Georgia 31093 and 2617 Deans Bridge Road, Augusta, Georgia 30906, and more particularly described on *Exhibit A* (collectively, the "*Premises*"), as evidenced by Memoranda of Master Lease, dated on or about the date of the Master Lease and recorded in the applicable real property records where the Premises are located.  The obligations of the Lessee under the Master Lease are guaranteed by (collectively, the "*Guaranties*"): (i) Guarantors pursuant to that certain Unconditional Guaranty of Payment and Performance, dated on or about the date of the Master Lease, for the benefit of Lessor, and (ii) James D. Graves pursuant to that certain Unconditional Guaranty of Payment and Performance, dated on or about the date of this Amendment, for the benefit of Lessor.

B.      Lessor and Lessee desire to amend the Master Lease and the Guarantors desires to ratify such amendments as set forth in this Amendment.

**NOW THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lessor and Lessee agree as follows:

1.      <u>Amendments</u>.  The Master Lease is amended as of the Effective Date as follows:

(a)      The term "*Base Annual Rental*" shall mean $55,000.00, as adjusted on each Adjustment Date occurring subsequent to the date of this Amendment as provided in *Section 3.2* of the Lease.

(b)      Lessee shall have the right to cease operations at the Premises located in Augusta, Georgia; *provided, however*, nothing in this *subsection (b)* is intended to limit Lessee's other obligations under the Master Lease with respect to such Premises, including Lessee's obligations to maintain the physical condition of such Premises as set forth in the Master Lease, maintain the insurance required on such Premises as set forth in the Master Lease and paying all real and personal property taxes applicable to such Premises as set forth in the Master Lease.  Lessee agrees to use commercially reasonable efforts to sublease the Augusta Premises to a third-party, *provided that* any such sublessee and the terms and conditions of such sublease shall be subject to Lessor's approval in Lessor's sole and absolute discretion.

(c)      *Article 16* of the Master Lease is deleted and of no further force and effect.

2.      <u>Guarantor Ratification</u>.  Each Guarantor hereby accepts and ratifies the amendments to the Master Lease as set forth in this Amendment and hereby acknowledges and agrees that the Guaranties are in full force and effect with respect to the Master Lease, including the amendments set forth in this Amendment.

3.      Binding Effect.  This Amendment shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective successors and assigns.

4.      Governing Law; Submission to Jurisdiction. **THE LAWS OF THE STATE OF ARIZONA (WITHOUT GIVING EFFECT TO ITS CONFLICTS OF LAWS PRINCIPLES) SHALL GOVERN ALL MATTERS ARISING OUT OF, IN CONNECTION WITH OR RELATING TO THIS AMENDMENT.** Any legal action or proceeding with respect to this Amendment shall be brought exclusively in the courts of the State of Arizona located in Maricopa County or of the United States for the District of Arizona, and each party accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; *provided, however*, that nothing in this Amendment shall limit or restrict the right of either party to commence any proceeding in the federal or state courts located in the state in which the Premises is located where the sole remedy sought is specific performance.  Lessor and Lessee hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, that either of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

5.      Attorneys' Fees.  Should either party institute any legal action or proceeding to enforce the provisions of this Amendment, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred in connection with the exercise of its rights and remedies hereunder as well as court costs and expert witness fees as the court shall determine.

6.      Amendment Controls.  Except as is specifically amended herein, the terms and conditions of the Master Lease and the Guaranties are ratified and confirmed and shall remain in full force and effect.  If any provision of the Master Lease or any Guaranty is in conflict with any provision of this Amendment, the terms of this Amendment shall control.

7.      Counterparts.  This Amendment may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.  Signature pages may be detached from the counterparts and attached to a single copy of this Amendment to physically form one document.  Signatures on counterparts of this Amendment that are delivered via facsimile or by other electronic means are authorized, and this Amendment shall be deemed executed when an executed counterpart hereof is transmitted by a party to the other party physically or via any electronic means.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the parties hereto have entered into this Amendment as of the Effective Date.

Signed, sealed and delivered in presence of:

**LESSOR:**

_____

**GE CAPITAL FRANCHISE FINANCE**

Unofficial witness

**CORPORATION**, a Delaware corporation

_____
Notary Public
MY COMMISSION EXPIRES:

By:_____

(AFFIX NOTARY SEAL)

Printed Name:_____
Its Authorized Signatory

Signed, sealed and delivered in presence of:

**LESSEE:**

_____

**GKRM, INC.**, a Georgia corporation

Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

By:_____
Printed Name:_____
Its Authorized Signatory

(AFFIX NOTARY SEAL)

**GUARANTORS:**

_____

Signed, sealed and delivered in presence of:

**JAMES D. GRAVES**

_____
Unofficial witness

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

Signed, sealed and delivered in presence of:

_____

_____
Unofficial witness

**JONATHAN E. KNEFF**

_____
Notary Public
MY COMMISSION EXPIRES:

(AFFIX NOTARY SEAL)

Contract No. 010825.0102

**FINAL EXECUTION COPY**

**EXHIBIT A**

**DESCRIPTION OF PREMISES**

Asset 031025, Warner Robins, GA

All that tract of parcel of land situate, lying and being in Land Lot 165 of the 5th Land District of Houston County, Georgia, being more particularly described as follows:

BEGIN at a rebar marking the intersection of the northerly right-of-way line of Watson Boulevard (100 foot right-of-way) with the westerly right-of-way line of Woodcrest Boulevard (80 foot right-of-way); thence North 88°31'15" West along said northerly right-of-way line of Watson Boulevard a distance of 115.26 feet to a rebar; thence North 00°00'34" West a distance of 209.92 feet to a rebar; thence South 88°33'54" East a distance of 115.10 feet to a rebar on said westerly right-of-way line of Woodcrest Boulevard; thence South 00°03'06" East along said right-of-way line a distance of 210.01 feet to the POINT OF BEGINNING.

Asset 031054, Augusta, GA

All that tract or parcel of land located in the State of Georgia, County of Richmond, being more particularly described as follows:

Commence at the intersection of the southwesterly right-of-way line of Murphy Road (40 foot right-of-way) with the Northwesterly right-of-way line of Deans Bridge Road (85 foot right-of-way); thence South 55°04'48" West along said northwesterly right-of-way line of Deans Bridge Road a distance of 550.29 feet to a concrete monument; thence continue South 55°04'48" West along said right-of-way line a distance of 173.71 feet to a rebar marking the POINT OF BEGINNING of the following described parcel; thence South 55°45'01" West along said right-of-way line a distance of 130.10 feet to an "X" in sidewalk; thence North 36°10'01" West a distance of 224.89 feet to a rebar; thence North 55°43'33" East a distance of 130.07 feet to a rebar; thence South 36°10'25" East a distance of 224.99 feet to the POINT OF BEGINNING.

## UNCONDITIONAL GUARANTY
## OF PAYMENT AND PERFORMANCE

This **UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE** (this "*Guaranty*") is made and entered into as of February ____, 2014, by **JAMES D. GRAVES**, an individual (the "*Guarantor*"), for the benefit of **GE CAPITAL FRANCHISE FINANCE CORPORATION**, a Delaware corporation (together with its successors and assigns under the Master Lease (as defined below), "*Lessor*").

1.      Unconditional Guaranty.  For valuable consideration, the receipt of which is acknowledged and, subject to to the Plan, Guarantor unconditionally, absolutely and irrevocably guarantees and promises to pay Lessor, or order, any and all amounts due, including, without limitation, Base Annual Rent, Base Monthly Rent, taxes, insurance premiums, impounds, reimbursements, late charges, default interest, damages, indemnity obligations and all other amounts, costs, fees, expenses and charges of any kind or type whatsoever, which may or at any time be due to Lessor pursuant to the following agreements (collectively, the "*Documents*"):

(a)     Master Lease.  Master Lease (the "*Master Lease*"), dated as of April 21, 2008, between Lessor and GK Management, Inc., a Georgia corporation ("*Original Lessee*"), as assigned by Original Lessee to GKRM, Inc., a Georgia corporation ("*Lessee*"), concurrently with the execution and delivery of this Guaranty, by which Lessor leases the real property located at 2000 Watson Boulevard, Warner Robbins, Georgia, and 2617 Deans Bridge Road, Augusta, Georgia 30906, including the improvements located on such real property (collectively, the "*Premises*"), to Lessee;

(b)     Purchase Agreement.  Purchase Agreement, dated as of the date of the Master Lease, between Lessor, as buyer, and Original Lessee, as seller, with respect to the conveyance of the Premises by Lessee to Lessor;

(c)     Environmental Indemnity Agreement.  Environmental Indemnity Agreement, dated as of the date of the Master Lease, by Lessee, successor by assignment to Original Lessee, for the benefit of Lessor;

(d)     Other Documents.  Any other document, agreement, instrument or certificate contemplated by the Master Lease, or any other documents, agreements, instruments or certificates now or after the date of this Guaranty in effect between Lessor and Lessee with respect to the Master Lease; and

(e)     Amendments.  Any amendment of the foregoing documents, agreements, instruments or certificates now or after the date of this Guaranty in effect between Lessor and Lessee.

2.      Obligations.  Guarantor also unconditionally guarantees the truthfulness and accuracy of all representations, warranties and certifications of Lessee, the satisfaction of all conditions by Lessee and the full and timely performance of all obligations to be performed by Lessee, under or pursuant to the Documents (the matters which are guaranteed pursuant to *Sections 1 and 2* are collectively referred to as the "*Obligations*").  The obligations of Guarantor under this Guaranty are primary, joint and several and independent of the obligations of Lessee and any and every other guarantor of the Obligations, and a separate action or actions may be brought and executed against Guarantor or any other such guarantor, whether or not such action is brought against Lessee or any other such guarantor and whether or not Lessee or any other such guarantor be joined in such action or actions. **EACH MARRIED INDIVIDUAL SIGNING THIS GUARANTY AGREES THAT RECOURSE MAY BE HAD AGAINST SUCH INDIVIDUAL'S INTEREST IN ALL PROPERTY JOINTLY HELD WITH SUCH PERSON'S SPOUSE, INCLUDING COMMUNITY PROPERTY, AND SUCH PERSON'S SEPARATE PROPERTY, FOR ALL GUARANTEED OBLIGATIONS.**

3.      Payment and Performance.  This is an absolute and unconditional guaranty of payment and performance and not of collection and Guarantor unconditionally (a) waives notice of the incurrence of obligations pursuant to the Documents or the acceptance of this Guaranty by Lessor; (b) waives any requirement that Lessor first make demand upon, or seek to enforce or exhaust remedies against, Lessee or any other person or entity

(including any other guarantor) or any of the collateral or property of Lessee or such other person or entity before demanding payment from, or seeking to enforce this Guaranty against, Guarantor; (c) waives all suretyship defenses and agrees not to assert any and all rights, benefits and defenses which might otherwise be available under the provisions of Ariz. Rev. Stat. §§ 12-1641 and §12 –1642 *et seq.*, 44-141, 44-142 or 47-3605, Arizona Rules of Civil Procedure Rule 17(f), or any other Arizona statutes or rules (including any statutes or rules amending, supplementing or supplanting same) which might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty; (d) waives the benefits of any statutory or common law provision limiting the right of Lessor to recover a deficiency judgment, or to otherwise proceed, against any Person (as defined in the Master Lease) obligated for the payment of the Obligations, after any foreclosure or trustee's sale of any collateral securing payment of the Obligations, including the benefits, if any, of Ariz. Rev. Stat. § 33-814; (e) covenants that this Guaranty will not be discharged until all of the Obligations are fully satisfied; (f) waives any and all rights to assert any defense, set-off, counterclaim or cross-claim of any nature whatsoever with respect to obligations under this Guaranty; and (g) agrees that this Guaranty shall remain in full effect without regard to, and shall not be affected or impaired by, any invalidity, irregularity or unenforceability in whole or in part of any of the Documents, or any limitation of the liability of Lessee or Guarantor under the Documents, or any limitation on the method or terms of payment under the Documents which may now or after the date of this Guaranty be caused or imposed in any manner.

4.    Continuing Guaranty.  This Guaranty is a continuing guaranty, and the obligations, undertakings and conditions to be performed or observed by Guarantor under this Guaranty shall not be affected or impaired by reason of the happening from time to time of the following with respect to the Documents, all without notice to, or the further consent of, Guarantor: (a) the waiver by Lessor of the observance or performance by Lessee or Guarantor of any of the obligations, undertakings, conditions or other provisions contained in any of the Documents, except to the extent of such waiver; (b) the extension, in whole or in part, of the time for payment of any amount owing or payable under the Documents; (c) the modification or amendment (whether material or otherwise) of any of the obligations of Lessee under, or any other provisions of, any of the Documents, except to the extent of such modification or amendment; (d) the taking or the omission of any of the actions referred to in any of the Documents (including, without limitation, the giving of any consent referred to in the Documents); (e) any failure, omission, delay or lack on the part of Lessor to enforce, assert or exercise any provision of the Documents, including any right, power or remedy conferred on Lessor in any of the Documents or any action on the part of Lessor granting indulgence or extension in any form; (f) the assignment to or assumption by any third party of any or all of the rights or obligations of Lessee under all or any of the Documents; (g) the release or discharge of Lessee from the performance or observance of any obligation, undertaking or condition to be performed by Lessee under any of the Documents by operation of law, including any rejection or disaffirmance of any of the Documents in any bankruptcy or similar proceedings; (h) without limiting the first sentence of *Section 6*, the receipt and acceptance by Lessor or any other person or entity of notes, checks or other instruments for the payment of money and extensions and renewals of such notes, checks or instruments; (i) any action, inaction or election of remedies by Lessor which results in any impairment or destruction of any collateral or any subrogation rights of Guarantor, or any rights of Guarantor to proceed against any other person or entity for reimbursement; (j) without limiting the first sentence of *Section 6*, any setoff, defense, counterclaim, abatement, recoupment, reduction, change in law or any other event or circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor, indemnitor or surety under the laws of the State of Arizona, the state in which the Premises is located or any other jurisdiction; and (k) the termination or renewal of any of the Obligations or any provision of the Documents.

5.    Representations, Warranties and Covenants.  Guarantor represents, warrants and covenants to Lessor that: (a) neither the execution nor delivery of this Guaranty nor fulfillment of nor compliance with the terms and provisions of this Guaranty will conflict with, or result in a breach of the terms or conditions of, or constitute a default under, any agreement or instrument to which Guarantor is now a party or by which Guarantor may be bound, or result in the creation of any lien, charge or encumbrance upon any property or assets of Guarantor, which conflict, breach, default, lien, charge or encumbrance could result in a material adverse change in the financial condition of Guarantor; (b) no further consents, approvals or authorizations are required for the execution and delivery of this Guaranty by Guarantor or for Guarantor's compliance with the terms and provisions of this Guaranty; (c) this Guaranty is the legal, valid and binding agreement of Guarantor and is enforceable against Guarantor in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, liquidation, reorganization and other laws affecting the rights of creditors generally and subject to general principles of equity or the Plan; (d) Guarantor has the full power, authority, capacity and legal right to execute and deliver this Guaranty,

and, to the extent Guarantor is a corporation, partnership, limited liability company or other form of entity, the parties executing this Guaranty on behalf of Guarantor are fully authorized and directed to execute the same to bind Guarantor; (e) Guarantor is not a "**foreign individual**," "**foreign corporation**," "**foreign partnership**," "**foreign limited liability company**," "**foreign trust**," or "**foreign estate**," as those terms are defined in the U.S. Internal Revenue Code and the regulations promulgated under the U.S. Internal Revenue Code; (f) Guarantor has delivered to Lessor either audited financial statements or, if Guarantor does not have audited financial statements, certified financial statements.  Such financial statements and other information relating to Guarantor delivered to Lessor are true, correct and complete in all material respects as of the date of this Guaranty.  Guarantor understands that Lessor is relying upon such information, and Guarantor represents that such reliance is reasonable.  The financial statements of Guarantor delivered by Lessee to Lessor pursuant to the Master Lease have been prepared in accordance with generally accepted accounting principles consistently applied and accurately reflect, as of the date of this Guaranty, the financial condition of Guarantor; (g) during the term of this Guaranty, Guarantor will not transfer or dispose of any material part of its assets except in the ordinary course of business for full and fair consideration and reasonably equivalent value; (h) subject to the Plan, without the prior written consent of Lessor, no Change of Control (as defined in the Master Lease) will occur and no interest in Lessee or Guarantor, as applicable, shall be pledged, encumbered, hypothecated or assigned as collateral for any obligation of any of the Lessee Parties (as defined in the Master Lease); (i) Guarantor will furnish Lessor annually, within 90 days after the close of each calendar year, a financial statement consisting of a balance sheet and such other financial information as Lessor may reasonably request in writing; (j) the Documents are conclusively presumed to have been signed in reliance on this Guaranty, and the assumption by Guarantor of its obligations under this Guaranty results in direct financial benefit to Guarantor; and (k) Guarantor is not, and will use its best efforts to ensure that no Person who owns a controlling interest in or otherwise controls Guarantor is or shall be a Person (A) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("**OFAC**"), Department of the Treasury, or any other similar lists maintained by OFAC or any other Governmental Authority pursuant to any authorizing statute, Executive Order or regulation; (B) designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation, or any other similar Executive Orders; or (C) subject to any trade restrictions under any Applicable Regulations, including those referenced in *clauses (A)* and *(B)* of this Section; and (vii) Guarantor and each of the other Lessee Parties are and will remain in full compliance with all applicable Bank Secrecy Act ("**BSA**") laws, regulations, and government guidance on BSA compliance and on the prevention and detection of money laundering violations or terrorist activities or threats..

6.     <u>Commencement and Continued Effect</u>.  This Guaranty shall commence upon execution and delivery of this Guaranty and shall continue in full force and effect until all of the Obligations are duly, finally and permanently paid, performed and discharged and are not subject to any right of reborrowing or extension by Lessee, and Lessor gives Guarantor written notice of the full and final satisfaction of the Obligations.  The Obligations shall not be considered fully paid, performed and discharged unless and until all payments by Lessee to Lessor are no longer subject to any right on the part of any person, including but not limited to Lessee, Lessee as a debtor-in-possession and/or any trustee in bankruptcy, to disgorge such payments or seek to recoup the amount of such payments or any part of such payments.  This Guaranty shall remain in full force and effect and continue to be effective in the event that:  (a) any petition is filed by or against Lessee or Guarantor for liquidation or reorganization, including, without limitation, under Title 11 of the United States Code, 11 U.S.C. Sec. 101 *et seq.* (the "**Code**"); (b) Lessee or Guarantor becomes insolvent or makes an assignment for the benefit of creditors; or (c) a receiver or trustee is appointed for all or any significant part of Lessee's or Guarantor's assets.  This Guaranty shall continue to be effective or be reinstated, as applicable, if at any time payment and performance of the Obligations, or any part of the Obligations, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by Lessor, whether as a "**voidable preference**", "**fraudulent conveyance**" or otherwise, all as though such payment or performance had not been made.  In the event that any payment of the Obligations, or any part of the Obligations, is rescinded, reduced, restored or returned, the Obligations shall be reinstated and deemed reduced only by such amount paid to Lessor and not so rescinded, reduced, restored or returned.

7.     <u>No Right of Subrogation, Indemnity, Reimbursement or Claims</u>.  Upon the occurrence and during the continuance of an uncured Event of Default (as defined in the Master Lease), Guarantor shall neither have any right of subrogation, indemnity or reimbursement nor hold any other claim against Lessee, and, during the continuance of an Event of Default, Guarantor shall not have the right to enforce any claims by Guarantor arising against Lessee.  Furthermore, Guarantor unconditionally and irrevocably waives (a) any right to participate in any

security now or after the date of this Guaranty held by Lessor or in any claim or remedy of Lessor or any other person against Lessee with respect to the Obligations, (b) any statute of limitations affecting Guarantor's liability under this Guaranty, (c) all principles and provisions of law which conflict with the terms of this Guaranty, and (d) diligence, presentment, protest, demand for performance, notice of nonperformance, notice of intent to accelerate, notice of acceleration, notice of protest, notice of dishonor, notice of execution of any Documents, notice of extension, renewal, alteration or amendment, notice of acceptance of this Guaranty, notice of defaults under any of the Documents and all other notices.

8.   Subordination of Indebtedness.   Notwithstanding the preceding *Section 7*, in the event that Guarantor shall have any claims against Lessee, any indebtedness of Lessee now or after the date of this Guaranty held by Guarantor is subordinated to the Obligations and shall be payable only at such times that no Event of Default shall be continuing. Any such indebtedness of Lessee to Guarantor shall, during the continuance of an Event of Default, be collected, enforced and received by Guarantor as trustee for Lessor and be paid over to Lessor on account of the Obligations, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

9.   No Inquiry Required.   It is not necessary for Lessor to inquire into the powers of Lessee or its officers, directors, partners or agents acting or purporting to act on its behalf, and Guarantor shall be liable for the Obligations in accordance with their terms notwithstanding any lack of authorization or defect in execution or delivery by Lessee.

10.   Additional Amounts.   In addition to the amounts guaranteed under this Guaranty, Guarantor agrees to pay (i) all of Lessor's attorneys' fees and other costs and expenses which may be incurred by Lessor in the enforcement of this Guaranty and (ii) interest (including postpetition interest to the extent a petition is filed by or against Lessee under the Code) at the Default Rate (as defined in the Master Lease) on any Obligations not paid when due. Guarantor agrees to indemnify and hold harmless Lessor for, from and against any loss, cause of action, claim, cost, expense or fee, including but not limited to attorney's fees and court costs, suffered or occasioned by the failure of Lessee to satisfy its obligations under the Documents. The agreement to indemnify Lessor contained in this Section shall be enforceable notwithstanding the invalidity or unenforceability of the Documents or any of them or the invalidity or unenforceability of any other Section contained in this Guaranty. All moneys available to Lessor for application in payment or reduction of the liabilities of Lessee under the Documents may, subject to the Plan, be applied by Lessor to the payment or reduction of such liabilities of Lessee, in such manner, in such amounts and at such time or times as Lessor may elect.

11.   Notices.   All notices, demands, requests, consents, approvals or other instruments required or permitted to be given pursuant to this Guaranty shall be in writing and given by (i) hand delivery, (ii) express overnight delivery service or (iii) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) the next Business Day (as defined in the Master Lease), if delivered by express overnight delivery service or (c) the third Business Day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the addresses (or facsimile numbers, as applicable) specified below:

| | |
|---|---|
| If to Guarantors: | James D. Graves<br>2095 Highway 211 NW, Suite 2F #362<br>Braselton, GA 30517 |
| with a copy to: | Tatum Hillman Hickerson & Powell, LLP<br>311 Alberta Terrace, NE<br>Atlanta, GA 30305<br>Attention:  Amy L. Hillman, Esq. |

|  |  |
|---|---|
| If to Lessor: | GE Capital Franchise Finance Corporation |
|  | 450 South Orange Avenue, Suite 1100 |
|  | Orlando, FL 32801-3352 |
|  | Attention:  Asset Management |

or to such other address or such other person as either Guarantor or Lessor may from time to time specify to the other party in a notice delivered in the manner provided above.

12.    Forum Selection; Jurisdiction; Venue; Choice of Law.  This Guaranty is made, executed and/or delivered in the State of Arizona, and it is the intent of Guarantor and Lessor that this Guaranty shall be deemed to be a contract made under and governed by the internal laws of the State of Arizona, without regard to its principles of conflicts of law; *provided, however*, that with respect to any married individual signing this Guaranty who is not a resident of the State of Arizona, this Section shall not be a contractual choice of the community property laws of the State of Arizona.  For purposes of any action or proceeding involving this Guaranty, Guarantor submits to the jurisdiction of all federal and state courts located in the State of Arizona and consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Arizona in accordance with applicable law.  Furthermore, Guarantor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper.  Nothing contained in this section shall limit or restrict the right of Lessor to commence any proceeding in the federal or state courts located in the state in which the Premises is located and/or where Guarantor resides or maintains its chief executive office, as applicable, to the extent Lessor deems such proceeding necessary or advisable to exercise remedies available under the Documents.

13.    True Lease.  Guarantor intends for the Master Lease to be a "**true lease**" and not a financing lease, capital lease, mortgage, equitable mortgage, deed of trust, security agreement or other financing or trust arrangement, and the economic realities of the Master Lease are those of a true lease.  Guarantor shall not challenge the validity, enforceability or characterization of the transactions contemplated by the Master Lease, and Guarantor shall support the intent of Guarantor, Lessee and Lessor that the Master Lease is a "**true lease**" and does not create a joint venture, partnership, equitable mortgage, trust, financing device or arrangement, trust agreement, security interest or the like. Guarantor acknowledges that Lessor did not prepare or assist in the preparation of any of the projected financial figures used by Lessee in analyzing the economic viability and feasibility of the transactions contemplated by the Master Lease.

14.    No Exclusive Rights and Remedies.  All of Lessor's rights and remedies under the Documents and this Guaranty are intended to be distinct, separate and cumulative and no such right and remedy is intended to be in exclusion of or a waiver of any of the others.

15.    No Third-Party Beneficiaries; Successors and Assigns.  This Guaranty is solely for the benefit of Lessor, its successors and assigns and is not intended to nor will it be deemed to be for the benefit of any third party, including, without limitation, Lessee. This Guaranty and all obligations of Guarantor under this Guaranty shall be binding upon the successors and assigns of Guarantor (including, a debtor-in-possession on behalf of Guarantor) and shall, together with the rights and remedies of Lessor, under this Guaranty, inure to the benefit of Lessor, all future holders of any instrument evidencing any of the Obligations and or their respective successor and assigns.  No sales, participations, assignments, transfers or other dispositions of any agreement governing or instrument evidencing the Obligations or any portion of such agreement or interest in such agreement shall in any manner affect the rights of Lessor or its successors and assigns under this Guaranty.  Guarantor may not assign, sell, hypothecate or otherwise transfer any interest in or obligation under this Guaranty.

16.    Partial Invalidity.    If any portion of this Guaranty is determined to be unconstitutional, unenforceable or invalid, such portion of this Guaranty shall be stricken from and construed for all purposes not to constitute a part of this Guaranty, and the remaining portion of this Guaranty shall remain in full force and effect and shall, for all purposes, constitute the entire Guaranty.

17.    Waiver of Jury Trial and Punitive, Consequential and Special Damages.  LESSOR, EACH OF THE OTHER LESSOR PARTIES, AND GUARANTOR, TO THE FULLEST EXTENT PERMITTED BY LAW,

5                                    Contract No. 010825.0102
**FINAL EXECUTION COPY**

WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING ARISING OUT OF, IN CONNECTION WITH OR RELATING TO, THIS GUARANTY, THE OTHER DOCUMENTS AND ANY OTHER TRANSACTION CONTEMPLATED HEREBY AND THEREBY. THIS WAIVER APPLIES TO ANY ACTION, SUIT OR PROCEEDING WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE. FURTHERMORE, EACH OF LESSOR AND GUARANTOR KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES FROM THE OTHER OR ANY OF THE OTHER'S AFFILIATES, OFFICERS, DIRECTORS OR EMPLOYEES OR ANY OF THEIR SUCCESSORS WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY EITHER PARTY AGAINST THE OTHER OR ANY OF THE OTHER'S AFFILIATES, OFFICERS, DIRECTORS OR EMPLOYEES OR ANY OF THEIR SUCCESSORS WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY OR ANY DOCUMENTS CONTEMPLATED IN THIS GUARANTY OR RELATED TO THIS GUARANTY. THE WAIVER BY GUARANTOR OF ANY RIGHT THEY MAY HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES HAS BEEN NEGOTIATED AND IS AN ESSENTIAL ASPECT OF THEIR BARGAIN.

18.     <u>Assumption of Responsibility</u>.  Guarantor assumes all responsibility for being and keeping informed of Lessee's financial condition and assets, and of all other circumstances bearing upon the risk of non-performance of the Lessee's obligations under the Documents and the nature, scope, and extent of the risks that Guarantor assumes and incurs hereunder.  Guarantor agrees that Lessee shall have no duty to advise Guarantor.

19.     <u>Maximum Liability Under Applicable Regulations</u>.  Guarantor shall be liable under this Guaranty for the maximum amount of such liability that can be incurred under this Guaranty without rendering this Guaranty, as it relates to Guarantor, voidable under applicable laws relating to fraudulent conveyance or fraudulent transfer, and not for any greater amount.  Guarantor agrees that the Obligations may at any time and from time to time exceed the amount of the liability of Guarantor under this Guaranty without impairing this Guaranty or affecting the rights and remedies of Lessor under this Guaranty.

20.     <u>Successors and Assigns</u>.  This Guaranty shall be binding upon Guarantor and its successors and assigns; provided; however, without the prior written consent of Lender (as defined in the Master Lease), Guarantor shall not assign this Guaranty or any of the rights or obligations of Guarantor under this Guaranty.

21.     <u>Interpretive Provisions</u>.  Unless the context of this Guaranty clearly requires otherwise or unless otherwise expressly stated in this Guaranty, this Guaranty shall be construed in accordance with the following:

(a)     <u>Use of Certain Words</u>.  References to the plural include the singular and to the singular include the plural and references to any gender include any other gender.  The part includes the whole; the terms "include" and "including" are not limiting; and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or."  The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Guaranty refer to this Guaranty as a whole and not to any particular provision of this Guaranty.

(b)     <u>References</u>.  References in this Guaranty to "Sections" or "Exhibits" are to the Sections of this Guaranty and the Exhibits to this Guaranty.  Any reference to this Guaranty includes any and all amendments, extensions, modifications, renewals, or supplements to this Guaranty.  The headings of this Guaranty are for purposes of reference only and shall not limit or define the meaning of any provision of this Guaranty.

(c)     <u>Construing the Guaranty</u>.  Each of the parties to this Guaranty acknowledges that such party has had the benefit of independent counsel with regard to this Guaranty and that this Guaranty has been prepared as a result of the joint efforts of all parties and their respective counsel.  Accordingly, all parties agree that the provisions of this Guaranty shall not be construed or interpreted for or against any party to this Guaranty based upon authorship or any other factor but shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of all parties to this Guaranty.

[SIGNATURE PAGE TO FOLLOW]

7
**FINAL EXECUTION COPY**

**EXECUTED** as of the date written on the first page of this Guaranty.

GUARANTOR:

**JAMES D. GRAVES**, an individual

Contract No. 010825.0102

**FINAL EXECUTION COPY**